UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHANNON EDWARD MEYER,<br><br>　　　　Petitioner,<br><br>　v.<br><br>JEFFREY UTTECHT,<br><br>　　　　Respondent. | Case No. 3:18-CV-05864-RJB-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for **July 22, 2019** |

This matter comes before the Court on petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his conviction for the crime of first degree attempted rape of a child. Petitioner asserts the following grounds: (1) the victim's identification of Mr. Meyer was impermissibly suggestive; (2) the victim's identification of Mr. Meyer did not have an independent origin; and (3) there was constitutionally insufficient evidence as to the element of Meyer's intent to have sex with the victim. Petitioner has requested an evidentiary hearing in this matter. For the reasons set forth below, the undersigned recommends that the request for an evidentiary hearing be DENIED, and that the second and third claims in the petition be DISMISSED as procedurally barred. The first claim should be dismissed because the petitioner cannot show that the Washington Supreme Court failed to follow United States Supreme Court precedent. Additionally, for the reasons set forth below, the undersigned recommends that the certificate of appealability (COA) be DENIED.

REPORT AND RECOMMENDATION - 1

I. BACKGROUND

A.  Statement of Facts

The Washington Court of Appeals summarized the facts relevant to this matter as follows:

> In June 2011, Meyer stayed with his sister, Teresa Meyer, for about three weeks. Teresa lived with her five-year-old daughter, KJC. During this time, Meyer took KJC into the kitchen, lowered his sweat pants, and shoved her face into his "privates.:" Clerk's Papers (CP) at 11. KJC tried to push Meyer away, but he again pulled her face into his penis.
>
> In 2012, KJC began living with foster parents, Rob and Sandy Carpenter. In 2013, KJC disclosed to Whitney Hall, her counselor, that her uncle had "shoved her face into his privates." CP at 11. KJC then disclosed the incident to Sandy Carpenter. KJC later participated in a forensic interview with Emily Watson.
>
> The State charged Meyer with first degree child rape and second degree rape, and, as alternatives, two counts of first degree child molestation. Following a hearing on the admissibility of child hearsay, the trial court allowed Sandy Carpenter, Hall, and Watson to testify as to statements KJC made to them about the incident. During the bench trial, the State played a video recording of Watson's forensic interview of KJC.
>
> The trial court found Meyer guilty of attempted first degree child rape and attempted second degree rape; but dismissed the attempted second degree rape conviction for sentencing purposes.

Dkt. 7, Relevant State Court Record, Exhibit 2 at 28-29.

B.  State Court Procedural History

Meyer appealed his conviction and sentence to the Washington Court of Appeals. Dkt. 7, Ex. 3-5. The Washington Court of Appeals affirmed his conviction, remanding only to correct his judgment and sentence by striking improperly imposed community custody conditions related to drug monitoring. Ex. 2. Meyer moved to reinstate his direct appeal on grounds of

1  ineffective assistance of counsel. Dkt. 7, Ex. 6. The Commissioner of the Washington Court of

2  Appeals denied review. Dkt. 7, Ex. 7.

3        Meyer sought review of his appeal by the Washington Supreme Court. Exhibit 8. The

4  Supreme Court declined to review his cases by an order. Dkt. 7, Ex. 9.

5        Meyer subsequently filed a personal restraint petition on May 30, 2017. Dkt. 7, Ex. 10-

6  12. The Washington Court of Appeals denied his petition. Dkt. 7, Ex. 13. Meyer sought

7  discretionary review of his petition from the Washington Supreme Court (Dkt. 7, Ex. 14), which

8  was denied by the Deputy Commissioner of the Washington Supreme Court (Dkt. 7, Ex. 15).

9  Meyer moved to modify the Deputy Commissioner's ruling on his personal restraint petition.

10  Dkt. 7, Ex. 16. Meyer's motion to modify the ruling was denied by Department II of the

11  Washington Supreme Court. Dkt. 7, Ex. 17.

12        Meyer filed this petition for writ of habeas corpus on May 11, 2018. Dkt 3. He

13  enumerates two grounds for relief (grounds one and three listed below), but his petition raises

14  three distinct issues for review:

15        (1) that the victim's in-court identification of Mr. Meyer was unreliable because of

16  impermissibly suggestive circumstances;

17        (2) that the victim's identification was faulty for lack of an independent origin; and

18        (3) there was insufficient evidence as to his intent to have sex with the victim.

19  Dkt. 3 at 16-18.

20  C.    <u>Evidentiary Hearing</u>

21        In a proceeding instituted by the filing of a federal habeas corpus petition by a person in

22  custody pursuant to a judgment of a state court, the "determination of a factual issue" made by

23  that court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the

24  burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Where

25

REPORT AND RECOMMENDATION - 3

1 he or she "has diligently sought to develop the factual basis of a claim for habeas relief, but has
2 been denied the opportunity to do so by the state court," an evidentiary hearing is not precluded.
3 *Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting *Cardwell v. Greene*, 152
4 F.3d 331, 337 (4th Cir. 1998)).

5       An evidentiary hearing "is required when the petitioner's allegations, if proven, would
6 establish the right to relief," but it "is *not* required on issues that can be resolved by reference to
7 the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (emphasis in the
8 original); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the
9 applicant's factual allegations or otherwise precludes habeas relief, a district court is not required
10 to hold an evidentiary hearing."). As the Ninth Circuit has stated, "[i]t is axiomatic that when
11 issues can be resolved with reference to the state court record, an evidentiary hearing becomes
12 nothing more than a futile exercise." *Totten¸* 137 F.3d at 1176; *see United States v. Birtle*, 792
13 F.2d 846, 849 (9th Cir. 1986) (an evidentiary hearing is not required if the motion, files and
14 records of the case conclusively show petitioner is entitled to no relief).

15       Here, Meyer makes "no indication from the arguments presented… that an evidentiary
16 hearing would in any way shed new light on the" grounds for relief raised in his petition. *Totten*,
17 137 F.2d at 1177. Petitioner's claims for habeas relief are record-based claims presenting legal
18 questions only (i.e., the suggestiveness of his in-court identification by the victim and the
19 sufficiency of the evidence brought against him) and may be resolved by a review of the state-
20 court record. Dkt. 3 at 16, 18.

21       Because, as discussed below, the grounds petitioner raises may be resolved based solely
22 on the state court record, and he has failed to prove his allegation of constitutional errors, no
23 evidentiary hearing is required.

24

25

REPORT AND RECOMMENDATION - 4

D.   Claims Two and Three Are Procedurally Barred

   1.   Exhaustion

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived explicitly by respondent. 28 U.S.C. § 2254(b)(3). A waiver of exhaustion thus may not be implied or inferred. A petition can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985). A petitioner must present a claim on every level of direct review, to alert the state "to the federal nature of the claim" and give the state the "opportunity to pass upon and correct" alleged violations of the petitioner's federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and internal quotation marks omitted).

A petitioner "fairly and fully" presents a federal claim to the state courts by presenting it "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted). The petitioner "must alert the state courts to the fact that he is asserting a federal claim." *Id.* It is not enough that all of the facts necessary to support the federal claim were before the state courts, or that the petitioner made a somewhat similar state-law claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (citing *Picard*, 404 U.S. at 270; *Anderson v. Harless*, 459 U.S. 4 (1982)). The petitioner must make the federal basis of the claim "explicit" in the state appeal or petition, "either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law." *Insyxiengmay*, 403 F.3d at 668.

In his petition for writ of habeas corpus, Meyer claims that his in-court identification by the victim was constitutionally invalid on two grounds: first, that the circumstances of the in-

court identification were impermissibly suggestive, and second, that the State failed to meet its burden of showing that the victim's identification had an independent origin from such suggestive circumstances. The suggestive identification claim was properly raised in a personal restraint petition that subsequently presented the same claim to the Washington Supreme Court in a motion for discretionary review. Dkt. 7, Ex. 10; Dkt. 7, Ex. 14. Citing the U.S. Constitution to invoke due process, Meyer argued that the victim was too young at the time of the crime to have remembered her attacker, that her testimony had been coached by her foster mother, and that she had been unduly influenced by seeing her uncle shackled and in prison garb. Dkt. 7, Ex. 14 at 9-14. The state does not argue that Meyer's first claim is unexhausted. The court may review this claim as properly exhausted, on its merits.

Regarding the issue of independent origin, however, a review of the state court record shows that Meyer's claim is unexhausted. Meyer failed to present the issue of independent origin at every level of state review in the collateral proceedings, only introducing the claim on his motion for discretionary review of the personal restraint petition. Dkt. 7, Ex. 14 at 405. The Deputy Commissioner of the Washington Supreme Court declined to consider the issue on procedural grounds, as it was improperly raised without having been presented at the Court of Appeals level. Dkt. 7, Ex. 15 at 412.

The petition's final habeas claim, that there was insufficient evidence of Meyer's intent to have sex with the victim, is also unexhausted. Meyer failed to present the issue as a federal constitutional violation on every level of direct review. Meyer had cited to the Constitution in his direct appeal (Dkt. 7, Ex. 4 at 69), but when seeking review by the Washington Supreme Court, his arguments cited only Washington state law, failing to incorporate any of his federal arguments from the appeals stage. Dkt. 7, Ex. 8 at 161-164. Although he made vague references

to "constitutional law" and "due process," those are not sufficient to properly exhaust the claim for federal habeas review purposes. *Id.* at 161. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996). Meyer attempted to raise this claim as a federal constitutional violation on both levels of review of his personal restraint petition (Dkt. 7, Ex. 10 at 182; Dkt. 7, Ex. 14 at 396), but the state courts found it procedurally barred under state law. Both the Washington Court of Appeals and Supreme Court expressly held that he failed to show, as required under state law, that "the interests of justice required reconsideration" of the claim. Dkt. 7, Ex. 13 at 388, citing *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303 (1994); Dkt. 7, Ex. 15 at 411, citing the same.

      2.     Procedural Default

The procedural default rule bars a federal court from considering a federal claim when the state court has been presented with the claim, but it declined to reach the issue for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002). Alternatively, procedural default applies when the state court would hold an unexhausted claim procedurally barred. *Id.* If a state procedural rule would now preclude a petitioner from raising a claim at the state level, the claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Any attempt to exhaust Meyer's independent origin claim would be barred in state court, because the claim is barred by the one-year state limitations period of RCW 10.73.090. Meyer's judgment and sentence became final in 2015. Furthermore, this claim would be barred as repetitive under RCW 10.73.140 and RAP 16.4(d). Likewise, Meyer's insufficient evidence claim is barred under state law, because Washington courts concluded in collateral proceedings that Washington procedural rules barred relitigation of the claim. Meyer has not argued that any exceptions to these procedural bars apply to his claims. These unexhausted claims are procedurally barred from presentation to the Washington Supreme Court under an independent and adequate state law and are thus in procedural default.

1   This court may only hear the merits of a procedurally defaulted claim if the petitioner can
2   show "cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 566
3   U.S. 1, 10 (2012). A petitioner can show cause by demonstrating that "some objective factor
4   external to the defense impeded [petitioner]'s efforts to comply with the State's procedural rule."
5   *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Alternatively, a petitioner who can demonstrate
6   actual innocence may have his claims heard. *See Coleman v. Thompson*, 501 U.S. 722, 750
7   (1991). Meyer has not shown that some objective factor impeded his efforts to comply with state
8   procedure and appeal these claims to the Washington Supreme Court, and he has not shown any
9   new evidence that demonstrates his actual innocence. Therefore, Meyer's unexhausted claims are
10  procedurally barred from this court's consideration. *See Martinez*, 566 U.S. at 10.

11  Because of this procedural bar, the remedies normally associated with a mixed petition
12  are inappropriate. The court will normally dismiss a mixed petition containing both exhausted
13  and unexhausted claims without prejudice. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Alternately,
14  the Court can stay the petition "while the petitioner returns to state court to exhaust his
15  previously unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). But the court
16  considers these remedies only when a state court has not yet had the opportunity to examine a
17  petitioner's claims. *Franklin*, 290 F.3d at 1231.

18  Here, dismissing the petition without prejudice would be futile because Meyer no longer
19  has the option of exhausting his second and third claims in state court before returning to federal
20  court. *See Franklin*, 290 F.3d at 1231. For the same reason, staying the proceeding would serve
21  no purpose. Accordingly, in the interest of judicial economy, this court should decline to dismiss
22  the petition or stay the proceeding, instead dismissing those unexhausted claims with prejudice,
23  while addressing the exhausted claims on the merits.

24

25

### E. No Violation of Clearly Established Law, and Determination of Facts Was Not Unreasonable As To Claim One

I. Standard of Review

A habeas corpus petition filed under 28 U.S.C. § 2254:

> [S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06). It also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision involves an "unreasonable application" of the Supreme Court's clearly established precedent if: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*; *see also Schriro*, 550 U.S. at 473.

REPORT AND RECOMMENDATION - 9

This is a "'highly deferential standard,' which 'demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)). "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). "As a condition for obtaining habeas corpus from a federal court," therefore, "a state prisoner must show that the state court's ruling on the claim being presented was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

A habeas petition also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual determination is "presumed to be correct," though, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). As such, a district court "may not simply disagree with the state court's factual determinations," but rather it must "conclude" that those determinations did not have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d 1041, 1046 (8th Cir. 1998).

"[W]hether a state court's decision was unreasonable" also "must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *Miller-El v.*

1  *Cockrell*, 537 U.S. 322, 348 (2003). The district court's review "focuses on what a state court

2  knew and did," and the state court's decision is "measured against [the Supreme] Court's

3  precedents as of 'the time the state court renders its decision.'" *Cullen*, 563 U.S. at 182 (quoting

4  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)); *see also Greene v. Fisher*, 132 S.Ct. 38, 44

5  (2011).

6      In this case, the Washington Supreme Court considered the facts and concluded that

7  petitioner's niece, the victim in this case, was probably not influenced by viewing the petitioner

8  in his prison clothing. The Washington Supreme Court determined that because she was his

9  niece, she would have known him and identified him as the perpetrator of the criminal acts,

10  regardless of the way he was dressed. Dkt. 7, Ex. 15 at 411-12. The legal test used by the

11  Washington Supreme Court was consistently interpreted and applied with clearly established

12  federal law. *Compare State v. Vickers,* 148 Wn.2d 91, 118 (2002) *with Neil v. Biggers,* 409 U.S.

13  188, 198-99 (1972). Dkt. 7, Ex. 15 at 411-12.

14      The facts show that the victim lived in the same home with the defendant and she had a

15  full opportunity to view the petitioner at the time of the events, the victim would have been

16  unfortunately forced to pay attention to the identity of the perpetrator in light of what was

17  happening to her, the victim previously gave accurate descriptions identifying her uncle, the

18  petitioner, and the temporal distance between the time of the offense (when victim was about

19  five or six years old) and the time of the victim's testimony at trial (when victim was nine years

20  old) was not immense. Dkt. 7, Ex. 18, at 422-424 (Index of the Verbatim Report of Proceedings),

21  446-450 (victim states that she was five or six at the time of the attempted rape, and is nine years

22  old at the time of her testimony), 449 (victim identifies defendant as the perpetrator, and states

23  that he is her uncle), Report of Proceedings in Clark County Superior Court Cause No. 14-1-1-

24

25

01859-2, 4-7-15 at 150-166, 168, 188-89, 208, 218-19, 230, 281, 281-85, 294. As the United States Supreme Court stated in *Neil v. Biggers,* 409 U.S. at 200, a sexual assault victim is not a "casual observer" but instead the victim is experiencing "one of the most personally humiliating of all crimes." In this situation, the victim's identification of the petitioner in court was reliable, under existing federal precedent from the United States Supreme Court. *Neil v. Biggers,* 409 U.S. at 198-99 (1972).

## CERTIFICATE OF APPEALABILITY

If the Court adopts the undersigned's Report and Recommendation, it must determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The undersigned recommends that petitioner not be issued a COA. No jurist of reason could disagree with the above evaluation of his constitutional claims or conclude that the issues presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court dismiss the petition for writ of habeas corpus with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **July 22, 2019**, as noted in the caption.

Dated this 8th day of July, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13